### WEBSTER vs. HEYLMAN.

No person can maintain trover for a chose in action but the legal owner. It is not like other goods and chattels, the title to which passes by mere delivery, and for which a bailee may maintain this action.

## APPEAL from St. Louis Court of Common Pleas.

### *Statement of the Case.*

This was an action of trover, brought by the appellee, for the use of James Galloway and E. F. Drake, at the September term, 1846, of the St. Louis Court of Common Pleas, for the recovery of a certain negotiable promissory note, made by Cottell & Davidson, payable to John Suydam and Joseph Williams, or order, for $140 22, drawing ten per cent. interest after maturity, and endorsed by said Suydam and Williams. The declaration alledges the note to be of the value of $200—that plaintiff lost and defendant found the same, &c., and that defendant refused, on request, to deliver the same to plaintiff.

The defendant plead not guilty.

The case was tried at the September term, 1847. George Meyrs was the only witness. His testimony shows that the note in question was put into the hands of Heylman in May, 1846, by Suydam & Williams; that it was dated March 31st, 1846; was due four months after date, and drew ten per cent. interest after maturity; that it, together with a large number of other notes, amounting in all to upwards of $3000, was put into Heylman's hands, for him, Heylman, to collect and receive the money on them for Galloway & Drake, who were creditors of Suydam & Williams to about the amount of all the notes; that Heylman, when he received the notes, gave to Suydam & Williams a receipt for the same, *expressing that he had received them for the benefit of Galloway & Drake; that Suydam & Williams had selected Heylman to act as their trustee* in receiving these notes and collecting the same; or, in other words, that they had maee a parol assignment of these notes to Heylman, to secure to Messrs. Galloway & Drake the amount they owed them.

Heylman took a portion of these notes, and among them the one sued for, and without any authority, placed them in Webster's hands as collateral security for a loan of money. Witness was a clerk for Suydam & Williams, and after learning that Webster had the note, called on him for it, *at the request of Heylman.* Webster said he had sent the note up the river for collection, and that the money would be received in a few days and he would then pay it over. Witness called on him again for the note, when Webster said he should retain the money until some other transactions between him and Heylman were settled; that he should place the money to Heylman's credit. Witness testified that the money for which Heylman had pledged the note to Webster, *had been repaid by Heylman in full, and that Webster retained the note for other purposes.*— Witness stated that he demanded the note in July or August, 1846, and before the commencement of the suit, and that Heylman had no other interest in it than as trustee.

The plaintiff then closed his case, and defendant thereupon asked the court to instruct the jury "that upon the plaintiff's own showing, he had no sufficient property in the note, or interest therein, to enable him to maintain this action;" whidh the court refused, and defendant excepted.

The court then, at the instance of the plaintiff, gave the following:

"If the jury believe from the evidence that the note in question was delivered by plaintiff to defendant for a special purpose, after that purpose was answered, defendant had no right to keep

*Webster* vs. *Heylman.*

it for another purpose; they must therefore find for the plaintiff, if they believe that defendant, after demand, refused to re-deliver the same." And also, "If the jury find for plaintiff, they will assess the damages at the value of the note at the time the demand was made for the same, and calculate the interest thereon from that time to this."

The defendant, Webster, then asked for the following instruction, which was given:

"If the jury believe from the evidence that the note in question was put into the hands of defendant, Webster, and a loan obtained thereon, or that the same was hypothecated as collateral security for a loan of money, they must find for defendant, unless they believe such money has been repaid by Heylman to defendant."

No exception was taken to plaintiff's instructions.

The jury found for the plaintiff the amount of the note and interest.

Defendant then moved for a new trial for the following reasons:

" The court erred in refusing to instruct the jury, when plaintiff had closed his case; that there was, on plaintiff's own showing, no sufficient title or property in him to enable him to maintain this action," and "because the verdict was against law" and "against evidence."

The motion for a new trial was overruled, and defendant excepted, &c.

Leslie & Lord, *for Appellant.*

The only question we propose to submit to the court is, whether this action was properly brought in the name of Heylman; and we argue that it was not, because Heylman had neither a *general* or *special* property in the note, but stood in the position of a mere agent or servant, and had voluntarily parted with the note.

*General property* is where the goods belong absolutely to one. *Special property* is where a man holds the goods by bailment or has any *temporary interest* therein, either in his own right and for his own use, or by authority of law for legal purposes. Starkie Ev., Phil. ed., 1837, p. 832; 1 Caine's Rep., 18; 2 Esp. Rep., 465; 7 Term Rep., 391; 12 Johnson, 403; 1 Yeates, 19; 3 Serg. & Rawl., 512; 2 N. Hamp., 319; 7 Cowen, 294.

Fisher & Gray, *for Appellee.*

1. Trover will lie for a negotiable promissory note or bill of exchange when it is detained contrary to the purpose for which it was delivered. Chitty on Bills, (8 Am. from 8 Eng. ed.) p. 274; 1 B. & A., 528; 1 Salk. 130; 10 J. R., 172.

2. Heylman had sufficient interest in the note to maintain trover. He had, at least, a right to its possession. He had given his receipt for it to Suydam & Williams, expressing that it was received for the benefit of Galloway & Drake. He was responsible for its safe keeping, and the use of due diligence in its collection. He had had it in his possession. He would also, as trustee, be entitled to the usual commission allowed to trustees for their services. 7 Con. Rep., 328; 13 Wend., 63; 5 Mass., 303; 2 N. H., 319; 1 Haywood, 26. See also *note*, p. 102 in 9 Mass. R.

3. Webster has waived his right to complain of the refusal of the Court of Common Pleas to give the instruction first asked by him, by his subsequent abandonment of that point and submitting the case to the jury on the question of fact whether the money for which the note had been pledged had been repaid by Heylman to Webster, as will be seen by his last instruction asked and given. The first instruction asked by defendant was in fact, though not in form, a demurrer to the evidence. Tidd Pr. 914. Had he formally demurred to the evidence, and his demurrer been overruled, there can be no doubt that, by afterwards taking issue upon the facts, he would have lost his right to assign for error the overruling of his demurrer. But the court should not regard the want of form. If it was a demurrer in fact, it should be so in effect. The record shows suf-

ficiently clear what was done in in the court below. The defendant, then to have placed himself in a position to complain of the refusal of the court to give his first instruction, should have abandoned his defence at that stage of the proceedings.

4. That the evidence was sufficient to warrant the jury in finding for the plaintiff. 10 Mo. R., 660, 676; 9 ib. 48; 8 ib. 59; 7 Mo. R., 220.

SCOTT, J., *delivered the opinion of the Court.*

The only question in this case is as to the right of Heylman to maintain this action. The action of trover must be brought by the party in whom the legal right of property exists. This may be a general or special property. The question is not whether the bailee had such a special property in the note as would enable him to sustain an action for its conversion, but whether the action can be maintained in the name of any other person except his, in whose name a suit on the instrument itself must have been brought. The case of Day vs. Whitney, 1 Pick., 502, is in point to show that the delivery of the note to Heylman, if it gave him any thing, gave only an equitable interest in it. In that case it was held that the assignee may maintain the action in the name of the assignor, the legal bill being in him, as by the laws of Massachusetts the assignment of a note not negotiable does not enable the assigned to maintain an action in his own name, The same principle is deducible from 2nd Greenleaf, sec. 639, and the cases there cited. The case of Tilden vs. Brown, 14 Ver., 164, is determined on the authority. Kingman vs. Pierce, 17 Mass. Rep. But it is clear from the report of that case, the point was not involved, nor was it intended that it should be raised, and it is only inferred that the point was decided because it does not appear from the statement of facts that the plaintiff was the legal owner of the instrument on which the suit was brought. We all know that reporters are loose in the statement of those facts on which no question is raised.— It does not appear from the case but that the plaintiff was the legal owner of the note. Besides, the case first above cited coming on in the same court sometime afterwards, no reference is made to that of Kingman vs. Pierce, and the point expressly ruled in that case is contrary to the reference deduced from the case last mentioned. No case has been found in which a suit has been brought in the name of a mere bailee of a chose in action for a special purpose where the beneficial ownership was in a third person. The doctrine with regard to the bailees of goods and chattels does not apply. There is obviously a distinction between goods,

the title of which passes by mere delivery, and those choses in action, the legal right to which can only be conveyed by endorsement.

There is no pretence for saying that by the subsequent instructions asked by the defendant, he waived the point raised by the first instruction. That instruction, it is conceived was only designed to raise the question determined in this case, and did not preclude the party from making other points necessary for his defence without abandoning it.

The other Judges concurring, the judgment will be reversed.